*1323 IKUTA, Circuit Judge,
dissenting:
Today the majority overturns a convicted murderer’s capital sentence, ignoring AEDPA’s command to defer to a state court’s decision unless it is objectively unreasonable. See Williams v. Taylor, 529 U.S. 362, 407, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). The AEDPA analysis here is straightforward. During the preliminary phases of Hurles’s capital trial, the state trial judge denied Hurles’s motion for appointment of a second attorney. Hurles appealed that denial in a special action proceeding, and the state Attorney General submitted a brief in the trial judge’s name defending the ruling. Over seven years later, after an unsuccessful direct appeal and post-conviction proceeding, Hurles claimed that the trial judge’s participation in the special action proceeding violated his due process rights and moved for her recusal from further participation in his case. The trial judge denied Hurles’s motion and rejected his claim that her participation in the special action proceeding created an unconstitutional “appearance of bias.” Hurles now claims that this conclusion is contrary to Supreme Court precedent. Because there is no clearly established Supreme Court authority that even hints the trial court’s decision was wrong, we must defer to its determination and deny the petition. Murdoch v. Castro, 609 F.3d 983, 991 (9th Cir.2010) (en banc).
The majority’s contrary conclusion that it can avoid AEDPA deference and grant the petition under § 2254(d)(2)[1] is unsupportable. The state court decision at issue is not “based on an unreasonable determination of the facts,” because it is a legal determination as to whether the undisputed facts give rise to an appearance of bias. Neither Hurles nor the majority has suggested how the state court’s legal conclusion on this issue was based on objectively unreasonable fact-finding. Because there is no basis for avoiding AEDPA deference here, we are not authorized to grant habeas relief. § 2254(d). I respectfully dissent.
I
Because an objective view of the facts and procedural history of Hurles’s case is crucial to a correct understanding of the legal issues in dispute, I briefly recount the relevant sequence of events.
A
The facts of Hurles’s crime form the backdrop for the dispute over whether Hurles needed a second attorney, which is at the heart of his habeas claim. The Arizona Supreme Court provided the following description:
On the afternoon of November 12, 1992, Hurles went to the Buckeye public library, a small, house-type building in a residential neighborhood. The only employee in the library at the time was Kay Blanton. The last patron, other than Hurles, left the library just before 2:40 p.m. Hurles then locked the front doors to the library and attacked Blanton in the back room. He stripped off her underwear and pulled her skirt above her waist in an unsuccessful attempt to rape her. Using a paring knife found in the back room of the library, Hurles mortally wounded Blanton, stab *1324 bing her thirty-seven times and inflicting blunt force trauma by kicking her to such an extent he tore her liver. [Hurles then fled the scene.]
Between 3:00 and 4:00 p.m., Hurles rode [a borrowed] bicycle to the home of his nephew, Thomas, in Buckeye and asked Thomas for a ride to Phoenix. Hurles had changed his clothes and cleaned himself up somewhat, and Thomas, who had been asleep and was unaware of Blanton’s murder, agreed to drive Hurles to Phoenix. As the two left the house, Hurles was carrying a bundle of clothes. During the drive to Phoenix, Thomas noticed that Hurles had bite marks on his wrist. When asked about them, Hurles told Thomas he had been in a fight with a Spanish man at the library, that he had stabbed the man with the man’s knife, and that he had received the bite marks in the fight. As part of his insanity defense, however, Hurles later claimed he had no recollection of anything that occurred between sitting in the library and going out the back door.
As they continued toward Phoenix, Hurles had Thomas pull over so he could toss the bundle of clothes out the car window. Thomas left Hurles at a Phoenix bus station, where he purchased a bus ticket to Las Vegas. Thomas returned to Buckeye, where he ultimately made contact with the police and told them of Hurles’ destination. Later that evening, the police intercepted Hurles’ bus on the way to Las Vegas; Hurles was removed from the bus, arrested, and returned to Phoenix.
With Thomas’ help, the police recovered Hurles’ discarded clothes. Police found blood on the clothing that matched Blanton’s blood type, which occurs in one percent of the population. Police also found blood matching Blanton’s type on Hurles’ shoes, which he was still wearing when taken from the bus. Four bloody shoeprints at the murder scene matched the soles of Hurles’ shoes, and Hurles’ palm print was found on the paring knife left at the scene.
... Blanton would have suffered great terror as she was stabbed repeatedly by Hurles. She also must have suffered great pain. In addition to the fifteen defensive stab wounds on her hands, Blanton was stabbed eight times in the head, twelve times in the torso, and twice in her lower extremities. She also suffered blunt trauma consistent with kicking, which tore her liver.
The barrage of violence inflicted on Blanton, the fact that she was conscious throughout the attack, and her struggle to fight off her attacker all indicate she suffered terribly and far above the norm of even first-degree murder, leaving no room to doubt that this murder was especially cruel.
State v. Hurles (.Hurles II), 185 Ariz. 199, 914 P.2d 1291,1293-94,1299 (1996).
B
After Hurles was indicted for this murder, Maricopa County appointed private defense counsel to represent him. Hurles made an ex parte motion for the appointment of a second counsel to aid in his defense. He argued that he was entitled to a second attorney because: (1) the case would “involve numerous civilian and law enforcement witnesses”; (2) the state would have forensic experts testify regarding suspect identification and sexual assault; and (3) “[preparation for the possible penalty phase in such a case will [be] in itself a time consuming, complex process.” To support his arguments on the third *1325 point, Hurles cited to California, rather than Arizona, law. As later noted by the Arizona Court of Appeals, Hurles’s motion for a second attorney was bare-bones, and failed to make “a particularized showing on the need for second counsel.” Hurles v. Superior Court, 174 Ariz. 331, 849 P.2d 1, 4 (App.1993). It made no mention of possible defenses, did not discuss the size of the defense’s witness pool for either the guilt or penalty phase, and did not specify any additional forensic or other technical information the defense would present on its own account. In short, it provided no substantial factual basis upon which the trial court could have concluded that a second attorney was necessary for Hurles to obtain adequate representation.
After the state trial court denied the request, Hurles filed a petition for special action in the Arizona Court of Appeals,[2] raising the same arguments he had presented in his motion. Per Arizona’s rules for special actions, Hurles named the State of Arizona, represented by the office of the Maricopa County Attorney, as real party in interest, and the trial judge, Judge Hilliard, as a nominal respondent. Id. at 2. In response, the Arizona Attorney General filed a brief in Judge Hilliard’s name, even though, as the Arizona Court of Appeals noted, it was not clear from the record that Judge Hilliard had even authorized a pleading to be filed in her name, nor that “there was [any] contact between Judge Hilliard and the Attorney General’s office as the pleading was prepared.”[3] Id.
The majority bases its claim that Judge Hilliard was biased primarily (if not solely) on the contents of this brief. First, the majority contends that the brief demonstrates Judge Hilliard’s view that “the case was simple because [Hurles] was obviously guilty.” Maj. op. at 1318. The majority’s claim is belied by an objective reading of the brief. As explained above, Hurles’s motion for appointment of a second counsel put at issue the question whether the case was too complex to be handled by one attorney. In ruling on the motion, the trial court had been obliged to consider the extent and complexity of the evidence likely to be presented in order to rule on the motion. The brief explained the basis for the trial court’s decision. In response to Hurles’s claim that a second counsel was required due to the high number of witnesses and forensic experts, the brief noted that Maricopa County planned to call “relatively few” witnesses, namely 10 law enforcement agents, the medical examiner, and several civilians.[4] The State also intended to present the following physical evidence: Hurles’s clothing, which was “stained with blood of the same PGM type as the victim’s,” his footprint in the victim’s blood at the library, and the “fact *1326 that books returned by [Hurles] in the return slot at the library place him at the scene a[t] the time of the murder.”
Turning to Hurles’s legal argument, the brief asserted that Hurles’s reliance on California precedent was misplaced because Arizona had adopted different rules, procedures, and time frames. Specifically, according to the brief, while California law presumed the necessity of a second attorney in capital cases, Arizona had no such presumption. Further, in refuting Hurles’s claim that the need to prepare simultaneously for the guilt and penalty phases mandated the appointment of a second attorney, the brief noted that while California required sentencing to begin within 20 days of the verdict, Arizona gave a capital defendant 90 days after the verdict to prepare for sentencing, as well as the option to seek an extension of that time for good cause; these procedural differences made concurrent preparation for both phases far less urgent in Arizona than in its sister state. Ariz. R.Crim. P. 26.3. Thus, the majority’s contention that the brief gave “short shrift” to Hurles’s arguments, or ignored the sentencing phase and the special burdens of a capital case, Maj. op. at 1318-19, is wrong.
Finally, the brief opined that defense counsel’s unsupported request for co-counsel at such an early stage of a case involving a fairly standard workload and flexible system of deadlines amounted to speculation by Hurles’s appointed counsel that she would render ineffective assistance if she did not have co-counsel.[5]
The majority also faults the brief for failing to consider “the need for extensive investigation” to address the “alleged bases for legal insanity.” Maj. op. at 1319. But at the time of the special action, Hurles’s attorney had not yet noticed any defenses (insanity or otherwise), and Hurles did not argue that the work involved to prepare an insanity defense was a reason he needed a second lawyer.
C
Before addressing the merits of the special action petition, the Arizona Court of Appeals determined that the case raised “a significant threshold question of standing” that gave the court the chance to refine its jurisprudence on “whether — or under what circumstances — the trial court may properly respond” to a petition for special action. Hurles I, 849 P.2d at 1-2. The court acknowledged that in the seminal case, Fenton v. Howard, the Arizona Supreme Court had held that “a judge does have the right to appear and to be represented in a special action against him, where the judge is a named respondent,” 118 Ariz. 119, 575 P.2d 318, 320 (1978), and that a later appellate decision, State ex rel. Dean v. City Court of Tucson, 123 Ariz. 189, 598 P.2d 1008, 1009 (App.1979), had interpreted Fenton as establishing “a trial judge’s unequivocal right to respond to a special action, whatever the nature of the decision the judge seeks to defend.” Hurles I, 849 P.2d at 3.[6] Notwithstanding this precedent, the court of appeals con- *1327 eluded that a later decision, Dunn v. Superior Court, 160 Ariz. 311, 772 P.2d 1164 (App.1989), which had interpreted Fenton as allowing a judge to respond to a special action to defend judicial policy, should govern such cases in the future. Hurles I, 849 P.2d at 3. Building on Dunn, the Arizona Court of Appeals held that a judge designated as the nominal respondent in a special action proceeding may file a brief for the purpose of defending an administrative policy or practice, but “that it is improper for a judge to respond merely to advocate the correctness of an individual ruling in a single case.” Id. Applying its new standing rule to the case before it, the court noted that because “the pleading merely argues that the respondent judge ruled properly on the evidence before her ... the trial judge lacked standing” to file a brief in the special action. Id. at 4.
Turning its attention to the merits of the special action petition, the Arizona Court of Appeals agreed with Judge Hilliard’s denial of Hurles’s motion to appoint a second counsel. Because Hurles’s counsel had failed to make “a particularized showing” on the need for a second lawyer and did not “submit evidence to the trial court regarding customary practice in defense of capital cases,” the court “[found] no matter that warrants special action intervention at this time.” Id.
The majority’s claims that the opinion by the Arizona Court of Appeals in this case “called out” Judge Hilliard “for ‘inappropriate’ conduct,” Maj. op. at 1321-22, and constituted “an important and strong rebuke of active judicial participation in special actions,” id. at 1316, are contrary to and unsupported by the language of that opinion.[7] While the majority uses the word “improper” nearly ten times to describe the fact that a brief was submitted on Judge Hilliard’s behalf, see Maj. op. at 1306, 1309, 1311-12, 1314 n. 5, 1315-16 (twice), 1316, 1316-17, the Arizona Court of Appeals used the word “improper” only twice, to define when it is appropriate for a trial judge to submit a brief in a special action proceeding (in which case the judge has standing) and when it is inappropriate (such that the judge lacks standing).[8] *1328 Hurles I, 849 P.2d at 3-4. The court did not use the term “improper” to suggest that a judge who submits a brief in defense of a particular ruling gives the appearance of bias or otherwise commits any type of ethical impropriety.[9] Rather, the court of appeals merely resolved two competing lines of authority and determined that a trial judge lacks standing to defend a specific ruling in a special action proceeding.
Finally, it is noteworthy that at the time of the submission of the brief on behalf of Judge Hilliard, Hurles did not indicate any concern or otherwise flag this event as being out of the ordinary. Hurles said nothing about a judicial bias concern before or after the trial in which the jurors unanimously found him guilty of premeditated and felony murder. Nor did he raise such a concern at sentencing, where under then-current Arizona rules, the trial judge acted alone in imposing the death penalty. Nor did Hurles’s direct appeal or first petition for post-conviction relief raise a judicial bias claim.[10] This silence detracts from Huries’s (and the majority’s) position that the submission of the brief creates the sort of extraordinary situation that gives rise to a “probability of actual bias” that is “too high to be constitutionally tolerable.” Withrow v. Larkin, 421 U.S. 35, 47, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975); see Maj. op. at 1315-16.
D
A year after the court denied his first petition for post-conviction relief, Hurles filed a motion stating that he intended to file a second petition for post-conviction relief that would raise his appearance-of-bias due process claim based on the special action proceeding. He therefore moved to recuse Judge Hilliard from further involvement in his case. Hurles’s recusal motion was referred to a different trial court judge, Judge Ballinger, who ruled that there was no basis to transfer Hurles’s case to another judge.[11] Hurles then submitted his second petition for post-conviction relief, which was assigned to Judge Hilliard pursuant to Arizona Rule of Criminal Procedure 32.4(e) and Judge Ballinger’s determination. Judge Hilliard noted the applicable objective test under Arizona law for recusal, specifically, “whether a reasonable and objective person knowing all the facts would harbor doubts concerning the judge’s impartiality.” In describing the facts of the special action, Judge Hilliard stated that the Attorney General had no specific authorization to file a pleading on her behalf in the special action, and that she (Judge Hilli *1329 ard) had made no contact with the Attorney General. She further noted that Hurles had not pointed to any aspects of the trial or the first petition for post-conviction relief that indicated bias. Relying on Judge Ballinger’s determination, and applying Arizona’s objective test, Judge Hilliard ruled that the facts did not require her recusal as a matter of state law, and did not amount to a due process violation. Therefore, the court rejected Hurles’s claim. The Arizona Supreme Court affirmed without opinion.
II
As described above, the state trial court determined that because a reasonable and objective person knowing all the facts would not harbor doubts about the judge’s impartiality, Judge Hilliard’s role in presiding over the trial and sentence did not deprive Hurles of his federal due process rights. The trial court’s decision is the last reasoned decision on this claim, and therefore the one that we must consider under AEDPA review. See Ylst v. Nunnemaker, 501 U.S. 797, 804, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991). Under § 2254(d)(1) and Supreme Court precedent, we are tasked with determining whether this determination was “contrary to” clearly established Supreme Court precedent, using the analytic framework set forth below.[12]
“Supreme Court precedent reveals only three circumstances in which an appearance of bias — as opposed to evidence of actual bias — necessitates recusal.” Crater v. Galaza, 491 F.3d 1119, 1131 (9th Cir. 2007). These three situations are (1) when a judge “has a direct, personal, substantial pecuniary interest in reaching a conclusion against [one of the litigants],” id. (alteration in original) (quoting Turney v. Ohio, 273 U.S. 510, 523, 47 S.Ct. 437, 71 L.Ed. 749 (1927)) (internal quotation marks omitted); (2) when “a judge becomes embroiled in a running, bitter controversy with one of the litigants,” id. (quoting Mayberry v. Pennsylvania, 400 U.S. 455, 465, 91 S.Ct. 499, 27 L.Ed.2d 532 (1971)) (internal quotation marks omitted); and (3) when a judge “acts as ‘part of the accusatory process,’ ” id. (quoting In re Murchison, 349 U.S. 133, 137, 75 S.Ct. 623, 99 L.Ed. 942 (1955)). Here there is no claim that Judge Hilliard had a pecuniary interest in the prosecution of Hurles. Nor does the majority suggest that Judge Hilliard was embroiled in a running feud with Hurles. Instead, the majority relies on three Supreme Court opinions, Murchison, Johnson, and Caperton,[13] as authority for its conclusion that Hurles’s due process rights were violated because the judge acted as part of the accusatory process. Maj. op. at 1309-11,1319-22.
*1330 This contention does not survive scrutiny. A state court decision is “contrary to” clearly established Supreme Court precedent only if “the state court applies a rule that contradicts the governing law set forth in Supreme Court cases or if the state court confronts a set of facts materially indistinguishable from those at issue in a decision of the Supreme Court and nevertheless arrives at a result different from the Court’s precedent.” Lambert v. Blodgett, 393 F.3d 943, 974 (9th Cir.2004) (citing Loclcyer v. Andrade, 538 U.S. 63, 73,123 S.Ct. 1166, 155 L.Ed.2d 144 (2003)). For AEDPA purposes, a point of law is not “clearly established” if a state court can draw a “principled distinction” between the case before it and the Supreme Court precedent establishing that rule of law. Murdoch, 609 F.3d at 991.
Here, not only could a state court draw a principled distinction between the situation in this case and those in Murchison and Johnson, but it is quite a stretch to hold that such Supreme Court precedents apply at all. Murchison involved the appearance of bias of a Michigan state judge who, while sitting as a “one-man grand jury,” concluded a witness was lying, charged him with perjury, and ordered him to show cause why he should not be convicted of criminal contempt. 349 U.S. at 134, 75 S.Ct. 623. The Court held that a judge could not act as a grand jury “and then try the very persons accused as a result of his investigations.” Id. at 137, 75 S.Ct. 623. Unlike Murchison, Judge Hilliard did not assume a prosecutorial role in Hurles’s case. In fact, neither Hurles nor the majority even suggests that Judge Hilliard participated in any way in the formal accusatory process that resulted in Hurles’s trial, over which Judge Hilliard later presided. Nor can the special action proceeding, in which Hurles asked the Arizona Court of Appeals to grant his request for a second defense attorney, be deemed part of the “accusatory process.” This proceeding, which was ancillary to any determination of guilt or penalty, involved an evaluation of the evidence only for purposes of determining whether a second counsel was necessary.
Similarly, Johnson v. Mississippi 403 U.S. 212, 91 S.Ct. 1778, 29 L.Ed.2d 423 (1971) (per curiam), involved a civil rights activist who successfully sued a state trial judge to enjoin the judge from discriminatory practices in seating juries. Id. at 214-15, 91 S.Ct. 1778. Two days after being so enjoined, the trial judge found the defendant guilty of criminal contempt in a different case. Id. at 215, 91 S.Ct. 1778. The Court concluded that due process would not permit the judge, who had just lost a civil rights case to the defendant (and therefore was subject to an ongoing federal injunction), to preside over the defendant’s contempt trial. Id. at 215-16, 91 S.Ct. 1778 (holding that because the judge had been “a defendant in one of petitioner’s civil rights suits and a losing party at that,” he was plainly “so enmeshed in matters involving petitioner” as to require his recusal). Unlike Johnson, the record here does not show that Judge Hilliard was “enmeshed” in matters involving Hurles, nor that someone in her position would likely have a personal animus toward him. Cf. id. at 215, 91 S.Ct. 1778 (noting “the affidavits filed by the lawyers reciting intemperate remarks of Judge Perry concerning civil rights litigants”). The majority’s position that the Arizona Court of Appeals’s ruling on standing would give rise to a temptation on Judge Hilliard’s part “not to hold the balance nice, clear, and true,” Maj. op. at 1320 (quoting Turney, 273 U.S. at 532, 47 S.Ct. 437), is meritless. With all due respect, the majority’s holding equating a state court ruling that Judge Hilliard lacked standing, but had ruled correctly on the merits of *1331 the appointment-of-counsel request, with Johnson’s, order enjoining a judge from further racial and gender discrimination in his courtroom, fails even the straight-face test.
The majority also cites Caperton for the general proposition that a judge’s failure to recuse may constitute a due process violation if “the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable.” 129 S.Ct. at 2259 (quoting Withrow, 421 U.S. at 47, 95 S.Ct. 1456). Although Caperton is not applicable here, because it was not clearly established Supreme Court precedent at the time of the state court decision at issue, the state court’s decision is not contrary to this rule. The Court has made clear that the more general the rule laid out by Supreme Court precedent, the more latitude we must give a state court “to reasonably determine that a defendant has not satisfied that standard.” Knowles v. Mirzayance, 556 U.S. 111, 129 S.Ct. 1411, 1420, 173 L.Edüd 251 (2009). Caperton makes clear that a failure to recuse rises to a constitutional violation only in the most “exceptional case.” Caperton, 129 S.Ct. at 2263; see also id. (“It is, of course, not every attack on a judge that disqualifies him from sitting.”) (quoting Mayberry, 400 U.S. at 465, 91 S.Ct. 499). Because the Arizona court’s determination that the special action proceeding did not rise to such an exceptional level was not “ ‘diametrically different’ [from], ‘opposite in character or nature’ [to], or ‘mutually opposed’ to” the rule of Caperton, it is not “contrary to” that case, and therefore does not violate § 2254(d)(1). Williams, 529 U.S. at 406,120 S.Ct. 1495.
Accordingly, an objective comparison of Hurles’s case to the Supreme Court decisions discussed above shows beyond question that the state court’s conclusion was not “contrary to” clearly established precedent. Because the court is not relieved of AEDPA deference, the district court was correct in determining it had no authority to grant habeas relief.[14]
Ill
Because the correct application of AED-PA here is straight-forward, the majority’s anomalous approach to AEDPA is surprising. Instead of considering whether the state court opinion was contrary to clearly established Supreme Court precedent, the majority focuses on whether the opinion was “an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.” Maj. op. at 1309 (quoting § 2254(d)(2)).
A
The crucial flaw in this approach is clear: there are no material facts in dispute in this case. The ultimate question, whether a specific fact situation involving a judge “created a constitutionally intolerable probability of actual bias,” is a legal question determined by objective rules. See Caperton. 129 S.Ct. at 2262; see also id. at 2263 (stating that the Due Process Clause “is implemented by objective standards that do not require proof of actual *1332 bias”)- Consistent with this Supreme Court jurisprudence, Hurles focuses solely on apparent bias because, as he explains, “in the context of judicial conflicts of interest, due process is offended not by proof of actual bias (something literally impossible for a party to prove) but rather by the appearance of impropriety.”[15] Given the “difficulties of inquiring into actual bias,” the Supreme Court has noted that the judge’s inquiry into his or her own motives or bias are irrelevant. Id. at 2268. For this reason, Judge Hilliard’s explanations of her limited role in the proceeding, which the majority asserts are unreasonable, Maj. op. at 1313-14, do not make a difference to the state court’s resolution of the constitutional issue. In her ruling, Judge Hilliard explained that the special action brief was drafted without her input or authorization and that she did not make contact with the Attorney General during the pendency of the special action. These are the only “facts” Judge Hilliard “found” based on her own knowledge. Maj. op. at 1311-12, 1312-13. But Judge Hilliard’s views regarding her lack of involvement in the matter are not relevant to Hurles’s claim that the undisputed facts (namely, that a brief was submitted in Judge Hilliard’s name in the special action proceeding, the brief discussed the evidence the State intended to present, and the brief questioned whether Hurles’s then-current attorney was able to render competent, effective assistance) gave rise to an appearance of bias. Said otherwise, Judge Hilliard’s behind-the-scenes involvement in brief-writing, whether nonexistent, minimal, or substantial, is irrelevant to Hurles’s claim that the publicly known facts give rise to a constitutionally intolerable appearance of bias.
B
The majority tries to escape the force of this conclusion by asserting that the state court's decision was based on an unreasonable fact-finding process. First, the majority claims that Judge Hilliard erred in resolving the challenge to her own impartiality. But as the majority acknowledges, Maj. op. at 1313-14, it is not improper for a judge to rule on his or her own recusal; rather, it is the standard procedure. Under both federal and Arizona law, judges typically rule on motions seeking to recuse them from a pending matter, and, where necessary, they determine the relevant facts. Id.; see, e.g., 28 U.S.C. § 455(a); Ariz.Code of Jud. Conduct R. 2.11(A); see also Microsoft Corp. v. United States, 530 U.S. 1301, 1301-02, 121 S.Ct. 25, 147 L.Ed.2d 1048 (2000) (statement of Rehnquist, C.J.) (setting forth the facts regarding his son’s representation of Microsoft in a different matter, and concluding that those facts did not require his recusal in a case brought by Microsoft on the same subject matter because “a well-informed individual would [not] conclude that an appearance of impropriety exists” based on those facts); Perry v. Schwarzenegger, 628 F.3d 1191 (9th Cir.2011) (statement of Reinhardt, J.) (setting forth the facts regard *1333 ing his relationship with his wife and her involvement in the matter before him and rejecting a motion to recuse because “a reasonable person with knowledge of all the facts would [not] conclude that [his] impartiality might reasonably be questioned”). The majority asserts that a ■judge’s determination about the propriety of recusal in a pending case is different from the same determination regarding a past case, Maj. op. at 1312-14, but no principled distinction can be made. In both situations, the judge must apply the same objective standard: whether the judge’s impartiality could reasonably be questioned. The majority’s position is particularly tenuous in this case: it is hard to argue convincingly that Judge Hilliard was objectively unreasonable in deciding Hurles’s recusal motion, given that another Arizona Superior Court Judge, Judge Ballinger, independently reached the same conclusion as Judge Hilliard.[16] And as this discussion has made plain, the majority’s repeated suggestion that Judge Hilliard behaved “improperly” in submitting a brief in the special action proceeding (and that the Arizona Court of Appeals so held) is baseless.
Second, the majority argues that the state court’s fact-finding process was flawed because the court declined to hold an evidentiary hearing on Hurles’s appearance-of-bias claim. Maj. op. at 1310-13. This contention also fails; obviously, an error in a fact-finding process is irrelevant if there are no material facts in dispute. In the cases cited by the majority, we have made clear that an evidentiary hearing is necessary only when a dispute relates to a material fact that must be resolved in order to fully adjudicate the habeas petitioner’s claims. See, e.g., Perez v. Rosario, 459 F.3d 943, 950-51 (9th Cir.2006) (“Where there is no likelihood that an evidentiary hearing would have affected the determination of the state court, its failure to hold one does not make such determination unreasonable.”); see also Taylor v. Maddox, 366 F.3d 992, 1000-01 (9th Cir.2004). As already noted, however, there was no such dispute here: Hurles’s claim that Judge Hilliard appeared biased was based on the undisputed fact that a brief was submitted in her name in the special action proceeding.
Although Hurles belatedly (in his reply brief in the second state post-conviction proceeding) stated that he “anticipatefd] the need for factual development” in order “to explore the nature of the contacts” between the Attorney General’s office and the court, he did not indicate what facts could have been developed that would have supported his due process claim, or why the nature of the contacts made a difference to his claim that Judge Hilliard appeared biased based on her participation in the special action proceeding.[17] And because his claim focuses on apparent, rather than actual, bias, the only salient facts are those already in the record: the fact of Judge Hilliard’s participation in the special action and her briefs statements in that proceeding.
Because there is no basis to conclude that the state court’s decision was based on an unreasonable determination of the *1334 facts in light of the evidence, § 2254(d)(2), the majority is not relieved of AEDPA deference under that prong of the statute. In holding otherwise, the majority’s decision invites future habeas petitioners to raise the baseless argument that a state court’s legal rulings are actually unreasonable factual determinations. Such an approach is directly contrary to Congress’s command in § 2254(d) and blurs a critical line that extends far beyond our habeas jurisprudence.
IV
The Supreme Court has harshly criticized our non-compliance with AEDPA deference, not only this Term,[18] but in many past years as well.[19] Here the majority once again disregards the AEDPA rules that limit a federal habeas court’s “role and authority,” Rice v. Collins, 546 U.S. 333, 335, 126 S.Ct. 969, 163 L.Ed.2d 824 (2006), by claiming it is relieved of AEDPA deference due to the state court’s “unreasonable determination of the facts,” § 2254(d)(2). But here the state court’s ruling was a legal one. There are no disputed material facts, and the only question is whether applying the Supreme Court’s objective rules to the undisputed facts reveals a due process violation. Under § 2254(d)(1), the state court’s determination that there was no such violation is not contrary to any Supreme Court precedent. Because the majority’s decision invalidates a lawfully imposed capital sentence, further frays the (increasingly threadbare) fabric of our AEDPA and due process jurisprudence, and lays the groundwork for future, even more frivolous habeas challenges to trial judges’ impartiality, I must dissent.

. Section 2254(d)(2) states:
(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim— ... (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

. Under Arizona law, the denial of a motion for appointment of a second attorney is not immediately appealable, and so a petitioner seeks review of such a ruling by filing a petition for special action in the Arizona Court of Appeals. See Hurles I, 849 P.2d at 1 n. 1, 2.

. The Attorney General explained that the presiding judge of the Maricopa County Superior Court requested a responsive pleading in this case. Hurles I, 849 P.2d at 4. Then-current Arizona precedent held that a judge had the right to appear in a special action, even though the judge was merely a nominal party. Fenton v. Howard, 118 Ariz. 119, 575 P.2d 318, 320 (1978). Because the County is the prosecutor, it could not take a position on the selection of defendant's counsel in the special action proceeding, which led the state Attorney General to step in to respond on the trial judge's behalf. Hurles I, 849 P.2d at 1.

.For example, the State intended to present an eyewitness's statement that Hurles ran from the Buckeye library after a witness discovered Blanton bleeding on the library floor, as well as Hurles's statement to his brother than he had stabbed someone at the library.

. The majority makes much of this statement, Maj. op. at 1319-20, but it merely underscores the brief's argument that the state’s case was simple and straightforward, malting appointment of a second attorney unnecessary.

. The Arizona Court of Appeals noted that Dean had criticized this result, and quoted Dean’s statement that its ruling allowed the trial judge to defend "his ruling and his hon- or,” such that the trial judge "is no longer impartial.” Hurles I, 849 P.2d at 3 (quoting 598 P.2d at 1010). The majority relies on this critique, Maj. op. at 1315-16, but fails to note that Dean nevertheless "interpreted Fenton as categorically permitting a special action response by any nominal-respondent judge.” 849 P.2d at 3.

. Lacking support in the text of the Court of Appeals’s opinion, the majority relies on two statements to buttress its position, one by Judge Hilliard, and the other by Assistant Attorney General Colleen French. In her order rejecting Hurles’s judicial bias claim, Judge Hilliard noted that “judges no longer file an 'improper' response in special actions since the [Court of Appeals’s] decision in Hurles v. Superior Court.” The majority’s suggestion that this passage shows Judge Hilliard's acknowledgment that the court’s “decision was an important and strong rebuke of active judicial participation in special actions,” Maj. op. at 1316, is mystifying. If anything, the judge’s use of quotation marks in this context connotes that "improper” was being used as a term of art, following the usage of the Court of Appeals, rather than its common meaning. The passage cannot fairly be read as a mea culpa on the part of the trial judge.
Second, the majority quotes the Assistant Arizona Attorney General as saying: " 'The [Arizona Court of Appeals] held that ... it is improper for a judge to [act as Judge Hilliard did],'" Maj. op. at 1316 (emphasis added). The unabridged version of this quotation makes clear that the Court of Appeals was not specifically criticizing Judge Hilliard, but was formulating a new rule of law. The full quotation reads: "The court held that a judge named as a respondent in a special action can file a responsive pleading only to explain or defend an administrative practice, policy, or local rule, and that it is improper for a judge to respond ‘merely to advocate the correctness of an individual ruling in a single case.’ ” Opp. to Mot. to Recuse at 2, Hurles v. Schriro, No. CIV-00-0118-PHX-RCB (D.Ariz.2008), ECF 72-6 at *25. The majority's paraphrase is misleading.

. The court explained its new rule on standing as follows: “We hold that it is proper for a judge named as a respondent in a special action to file a responsive pleading if the purpose of the response is to explain or de *1328 fend an administrative practice, policy, or local rule, but that it is improper for a judge to respond merely to advocate the correctness of an individual ruling in a single case.” See Hurles I, 849 P.2d at 3; see also id. at 4 ("Our holding that the judge's responsive pleading was improper makes it unnecessary for us to decide the propriety of the Attorney General appearing on her behalf.”).

.By contrast, the Arizona Court of Appeals noted that it might be proper for a judge "attempting to respond to an allegation of ethical impropriety” to respond in a special action proceeding. 849 P.2d at 3 n. 4. The court did not suggest that Judge Hilliard was guilty of an ethical lapse.

. Per Arizona Rule of Criminal Procedure 32.4(e), Hurles’s first petition for post-conviction relief was assigned to Judge Hilliard. The trial court denied the petition, and the Arizona Supreme Court affirmed.

. Judge Ballinger construed Hurles’s motion as a motion for change of judge for cause, which under Arizona Rule of Criminal Procedure 10.1, entitles a defendant "to a change of judge if a fair and impartial hearing or trial cannot be had by reason of the interest or prejudice of the assigned judge.”

. Because the state court did not expressly apply the Supreme Court's decisions considering when a probability of judicial bias rises to a constitutional level, only the "contrary to” prong of § 2254(d)(1) is at issue here. See Williams v. Taylor, 529 U.S. 362, 407, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).

. Because Caperton was decided in 2009, and the state court decision at issue was decided in 2002, Caperton is not "clearly established Supreme Court precedent” for purposes of AEDPA review. See Williams v. Taylor, 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) (stating that § 2254(d)(1) requires the state court’s decision to be measured against the "holdings ... of [the Supreme Court’s] decisions as of the time of the relevant state-court decision”). The majority justifies its reliance on Caperton by asserting it "announce[s] no new rule of law that would affect our analysis here,” Maj. op. at 1310 n. 3, yet its ten citations to that decision belie this claim and suggest its centrality to the majority’s reasoning. But because the state court's decision was not contrary to Caperton, the majority’s mistaken reliance on this decision does not help its AEDPA analysis.

. Contrary to the requirements of AEDPA, the majority appears to con duct a de novo review of the state trial court's decision sub silentio. Maj. op. at 1310-14. But even were we authorized to engage in such review, there is no support for the majority’s conclusion that Hurles's due process rights were violated. The Supreme Court has held that a judge’s failure to recuse raises due process concerns only in "the most extreme of cases.” Aetna Life Ins. Co. v. Lavoie, 475 U.S. 813, 821, 106 S.Ct. 1580, 89 L.Ed.2d 823 (1986). Even the majority's emotional description of the special action proceeding cannot disguise the fact that the Attorney General’s submission of a brief supporting Judge Hilliard’s denial of Hurles’s motion for the appointment of a second counsel does not rise to that level.

. Hurles has consistently stressed the themes of "appearance of impropriety,” and "structural due process,” rather than any conduct evincing actual bias on the part of Judge Hilliard. For example, in his Second Petition for Post-Conviction Relief, Hurles repeatedly emphasizes that due process sometimes requires recusal of judges who have "no actual bias.” Hurles also reminded the court that he "need not necessarily demonstrate actual subjective bias to prevail on []his claim.” Hurles’s reply brief in the second post-conviction proceeding likewise argued that: "[CJourts will find a due process violation upon a showing of a judge's conflict of interest — regardless of whether the complaining litigant can demonstrate any actual subjective bias at all.” Hurles’s own arguments thus undercut the majority's claim that the key inquiry in this case is a factual one.

. Presumably because Judge Ballinger's independent determination that Judge Hilliard could decide Hurles’s recusal motion completely undermines the majority’s claim that Judge Hilliard was objectively unreasonable in doing so, the majority tries to avoid considering the import of Judge Ballinger’s decision. Maj. op. at 1314 n. 6 (“Judge Ballinger’s decision is not the decision we are reviewing.”). This is an error: in adjudicating a habeas petitioner’s claim, a federal court should consider "the record that was before the state court that adjudicated the claim on the merits.” Cullen v. Pinholster, - U.S. ■-■, 131 S.Ct. 1388, 1398, 179 L.Ed.2d 557 (2011). Moreover, Hurles’s recusal motion presented the same arguments and bias allegations as his second petition for post-conviction relief and even incorporated those arguments by reference; accordingly, Judge Ballinger’s decision was on all fours with Judge Hilliard’s subsequent resolution of those same arguments.

. If anything, the nature of those contacts would be relevant only to a claim of actual bias, which Hurles disclaimed in his state-court papers. See supra note 15.

. See, e.g., Cullen, 131 S.Ct. 1388; Felknerv. Jackson, - U.S. •-■, 131 S.Ct. 1305, 179 L.Ed.2d 374 (2011) (per curiam); Swarthout v. Cooke, - U.S. -, 131 S.Ct. 859, 178 L.Ed.2d 732 (2011) (per curiam); Harrington v. Richter, —• U.S. -, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011); Premo v. Moore, —• U.S. -, 131 S.Ct. 733, 178 L.Ed.2d 649 (2011).

. See, e.g., Schriro v. Smith, 546 U.S. 6, 8, 126 S.Ct. 7, 163 L.Ed.2d 6 (2005) (per curiam) ("[T]he Court of Appeals exceeded its limited authority on habeas review....”); Middleton v. McNeil, 541 U.S. 433, 437, 124 S.Ct. 1830, 158 L.Ed.2d 701 (2004) (per curiam) ("[The Ninth Circuit's] conclusion failed to give appropriate deference to the state court's decision.”); Yarborough v. Gentry, 540 U.S. 1, 11, 124 S.Ct. 1, 157 L.Ed.2d 1 (2003) (per curiam) (same); Woodford v. Visciotti, 537 U.S. 19, 20, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002) (per curiam) (reversing Ninth Circuit's grant of habeas relief because it "exceed[ed] the limits imposed on federal habeas review by 28 U.S.C. § 2254(d)”); Early v. Packer, 537 U.S. 3, 10, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002) (per curiam) (admonishing the Ninth Circuit for "repeatedly and erroneously substitut[ing]” the phrase " ‘failed to apply ' clearly established Supreme Court law” for "the more demanding requirement of § 2254(d)(1): that the decision be 'contrary to ’ clearly established Supreme Court law” (emphases added)).